268 So.2d 855

**Willie David WILLIAMS**

v.

**STATE.**

**1 Div. 206.**

Court of Criminal Appeals of Alabama.

Oct. 31, 1972.

Lee B. Williams, Grove Hill, for appellant.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charges the appellant with the robbery of one Millage Pugh. The Jury's verdict and judgment fixed punishment at fifteen years imprisonment in the penitentiary.

Phalar Dixon, the first witness for the prosecution, testified that at approximately 1:00 p. m. on a Sunday in October of 1970, Millage Pugh came to her house in Fulton, Alabama, for the purpose of eating lunch. Also present in the house at that time were Phalar Dixon's husband, O. G. Dixon, and the appellant. After Pugh finished his lunch, he pulled out his billfold and paid Mrs. Dixon $1.00 for his lunch. Mrs. Dixon observed the appellant "peeping" into Pugh's billfold at this time. Pugh then left the Dixon home, and the appellant left "right behind" him. The next time Mrs. Dixon saw Pugh was a few minutes later when Pugh came running back into the Dixon house bleeding profusely from the top of his head. Pugh lived next door to the Dixons, approximately seventy feet from their home. Mrs. Dixon treated Pugh's wound, and Pugh was taken to a doctor.

The next State's witness, O. G. Dixon, gave substantially the same testimony as that given by his wife, Phalar Dixon. He testified additionally that Pugh had been gone from their house approximately ten minutes before he came back bleeding from his head and hollering for help.

Millage Pugh testified for the State that at the time in question he had $47.00 in his billfold; that the appellant left the Dixon house with him and asked him to give him (the appellant) a drink of water when they arrived at the steps of Pugh's house; that Pugh told the appellant to get the water from the refrigerator in the house, whereupon Pugh sat down on his porch; that the appellant returned and struck Pugh over the head with an ax twice, removed his billfold, took the $47.00 from the billfold, and ran away. Pugh positively identified the appellant as his assailant. Pugh's other testimony substantiated that given by the Dixons. He testified additionally that he had been confined in a hospital in Thomasville, Alabama, for approximately a week in order to recover from his wounds, and that he had gotten "nair penny" of his $47.00 returned to him.

The appellant testified in his own behalf that he had been at the Dixon house on the date and time in question, but that when Pugh left the Dixon house, the appellant also left and went to his own home. The appellant denied striking Pugh in the head with an ax and denied taking any money from him. The appellant further testified about some time spent in the Mount Vernon Hospital and about having consumed

the contents of a container of Draino while in the Clarke County Jail.

The appellant also offered what purported to be alibi testimony through the witness Jesse Williams.

The appellant also offered the testimony of Chief Deputy Rowdie McGee pertaining to having consumed some Draino while in the Clarke County Jail, necessitating his being taken to Searcy Hospital.

I

The indictment in this cause reads as follows [omitting formal parts]:

"INDICTMENT

"The Grand Jury of said County charge that before the finding of this indictment Willie David Williams whose name is otherwise unknown to the Grand Jury, feloniously took money, of the value of Forty Seven Dollars, the property of Millage Pugh, from his person, and against his will, by violence to his person, or by putting him in such fear as unwillingly to part with the same, against the peace and dignity of the State of Alabama."

The appellant did not file a demurrer testing the sufficiency of the above indictment, nor did he request any charges with reference to this, nor did he file a motion in arrest of judgment or motion for new trial challenging the validity or sufficiency of this indictment.

On appeal counsel argues that the indictment is so indefinite in its description of the property taken, referring to it simply as "money of the value of $47.00," as to not be able to sustain the conviction.

It is pointed out on appeal that the indictment fails to describe the money as being the lawful currency of the United States or further describing same as so many dollars, bills of a particular denomination, or that neither does it indicate that

a more particular description was otherwise unknown to the Grand Jury. We agree that this indictment is no model to emulate.

■ However, where, as here, no demurrer is filed in the trial court challenging the sufficiency of the description of the money or property taken, we are bound by Reid v. State, 88 Ala. 36, 6 So. 840, which holds:

" . . . It may be conceded that the allegation as to the money is defective and insufficient in not stating the number and denomination, which has been held in several cases to be necessary. Burney v. State, 87 Ala. 80, 6 So. 391; Levy v. State, 79 Ala. 259. This does not vitiate the indictment."

Further, in *Reid*:

" . . . [T]he defendant could have protected himself against conviction by a proper charge."

■ Where, as here, the proof on trial showed that in fact the money was currency of the United States in the amount of $47.00, "[we] judicially knew that the money, as a matter of law, was . . . of a commercial value equal to that imported by its face." Barddell v. State, 144 Ala. 54, 39 So. 975; Gady v. State, 83 Ala. 51, 3 So. 429.

We, therefore, are of the opinion that this indictment is not so deficient as to deny the accused due process of law. Harris v. State, 44 Ala.App. 449, 212 So.2d 695, and authorities cited.

II

■ There being no request for the affirmative charge or motion to exclude the State's evidence, or motion for new trial, the sufficiency of the evidence to support the conviction is not before this Court.

Harmon v. State, 47 Ala.App. 576, 258 So. 2d 917, and authorities cited.

However, out of deference to the appellant, himself, who here filed pro se assignments of error challenging the weight and sufficiency of the evidence, we quote from Chamberlain v. State, 48 Ala.App. 254, 263 So.2d 709:

"The appellant raises three contentions concerning his trial. Where, as here, the appellant contends that he took no part whatever in the robbery and insists that he was not at the scene of the crime at the time of its commission, and offered testimony to support his alibi, such conflict in the evidence presents a jury question. McColston v. State, 20 Ala. App. 591, 104 So. 347.

"We are of the opinion that the evidence here is sufficient to sustain a conviction of robbery as against a defense of alibi. McColston v. State, supra; Dorch v. State, 40 Ala.App. 475, 115 So.2d 287."

III

 Finally, appellant argues that the trial court made no effort to determine if he was competent to stand trial. This contention is not sustained by the record as the Chief Deputy Sheriff, called to the witness stand by the appellant, himself, testified as follows:

"Q He has been released from Searcy and is back in the Clarke County, Alabama, jail in custody?

"A They released him last Friday completely well back to us.

"Q They released him completely well to the custody of Clarke County last Friday?

"A Yes, sir."

We have here carefully examined the record as is our duty under the provisions of Title 15, Section 389, Code of Alabama, Recompiled 1958, and finding no error therein, the judgment of conviction is due to be and the same is hereby

Affirmed.

All the Judges concur.