291 So.2d 364

**Lewis Ben CLAY, alias**

v.

**STATE.**

5 Div. 174.

Court of Criminal Appeals of Alabama.

March 5, 1974.

Rehearing Denied April 9, 1974.
Certiorari Denied May 2, 1974.
See 293 So.2d 828.

Charles M. Ingrum, Opelika, for appellant.

William J. Baxley, Atty. Gen., and Rosa Gunter Hamlett, Asst. Atty Gen., for the State, appellee.

TYSON, Judge.

The Grand Jury of Lee County, Alabama, charged the appellant with the robbery of Joseph Earl Slay. The Jury found the appellant guilty as charged, and its verdict and judgment fixed punishment at ten years imprisonment in the penitentiary.

Joseph Earl Slay testified that he was employed by Edwin Phillips, owner of Phillips Oil Company in Auburn, Alabama, on December 2, 1972. On this date, Slay was on duty at "Mack's Self Service" at about 4:00 in the afternoon when the appellant and another man, one Richard Earl Ford, drove into the station and parked near the curb of the street. He stated that the appellant had come by about an hour earlier and that he had cashed a check for him; that on the second occasion, the following occurred:

"A. Well, he came into the station and he said he needed some more money. And I thought maybe when he came in he was going to give me the money back from the check that he had cashed. And

so I didn't think anything about it at first, until he said he needed some more money on the check. And I said, 'Well, I can't give you any more.' And he said he had to have some more money. And I told him, I said, 'I can't.' I said, 'How about giving me the money back, and I give you the check and you go somewhere else and get it cashed?' And he had said he had to have some money, and I was waiting on a customer and I was talking to him, and he just pushed me back and he grabbed the phone and he dialed a couple of numbers and the cash drawer had been left open, and I didn't pay any attention to that, and I didn't see it at first and I looked down and I saw the fellow's hand go into the cash drawer and I asked him, 'Did you get any money out of the cash drawer?' And—well, before that, I got the phone and hung it up and then I said, 'Did you get any money out of the cash drawer?' And he said, 'What if I have?' And I said, 'Well, I'll call the law then.' And so, I don't know; he got mad then, and started to backing up.

. . . . . .

"A. Well, I saw his hand coming from the cash drawer and I asked him did he get any money out of it and he said what if he did and I said, 'I'll call the law,' and then he got mad backed up and told me to give him twenty dollars. And I told him 'No' and he said, 'Well, I'll blow your Goddamned head off if you don't give me the twenty dollars.' And he stuck his hand inside of his coat when he said it."

Slay stated he notified the Auburn police immediately after the appellant drove off.

On cross examination, Slay indicated that on an earlier occasion the appellant had come in, and that he had accepted a check for $100.50, payable to "Head Start," which he had gotten the appellant to endorse and put his Social Security number and phone number on, and for which he

gave the appellant $20.00; that he stated he would get this cleared before closing time and pay him the difference when he came back.

Richard Earl Ford testified that on December 2, 1972, about 3:00 p. m., the appellant was riding in his automobile, and that they had gone by a liquor store. He stated that they stopped by to see a girl friend of the appellant's and then went back by the service station in question. He stated that about this time a friend of his drove up, and he went over to talk with him; that a few minutes later the appellant came back and jumped into the car and stated that he wished him to take him to his sister's, which he did. He stated that later that afternoon he was stopped by the officers and he told them that he had taken the appellant to his sister's residence.

The appellant's motion to exclude the State's evidence was overruled.

The appellant testified that he had gone by Mack's Service Station at about 3:00 on the afternoon in question, and that Joseph Earl Slay had loaned him $20.00. He stated that Slay did require him to write his address, telephone number and Social Security number on a white sheet of paper, but told him not to say anything about lending the boss' money as it would get him in trouble.

Clay further testified that later that afternoon he got his friend, Richard Earl Ford to drive him back by Mack's Service Station, and that he told him he needed to borrow some more money as he was going to the liquor store. He stated that Slay reached inside the cash register and handed him two $20.00 bills as a loan. He denied presenting a check to Slay for $100.50, made out to Head Start, or asking him to cash it.

Joseph Earl Slay was then recalled to the witness stand and identified the check in the amount of $100.50, made payable to Head Start, signed by Bob Herndon. This

check was drawn on the Farmers and Merchants Bank of Russell County, and bears date of December 1, 1972. Slay then identified the appellant's handwriting, address, telephone number, and Social Security number. He stated that he had never made a loan to the appellant, and that it was only when the appellant threatened to blow his head off that he turned over to him the $40.00 on the second occasion the appellant was at the station.[1]

## I

This Court, per Harwood, J., in Tunstill v. State, 33 Ala.App. 460, 34 So.2d 857, cert. denied 250 Ala. 421, 34 So.2d 859, observed:

" . . . Thomas v. State, 91 Ala. 34, 9 So. 81, 82, contains an excellent discussion by Justice McClellan of the offense of robbery. Therein he defines robbery to be 'a felonious taking of goods from the person of another, or in his presence, against his will, by violence, or putting him in fear. And this violence must precede or accompany the stealing.' In Hardis v. State, 28 Ala.App. 524, 189 So. 216, 217, in discussing the offense of robbery Judge Samford wrote: 'As defined by our decisions, robbery is an offense against both person and property, and is briefly defined as the felonious taking of money or goods of value from the person of another, or in his presence, by violence or by putting him in fear. Parks v. State, 21 Ala.App. 177, 106 So. 218.' "

The issue thus presented by this record is whether or not the evidence is sufficient to sustain the verdict and judgment. After careful consideration, we are of the opinion that the trial court ruled correctly on appellant's motion to exclude. Williams v. State, 48 Ala.App. 737, 267 So.2d 526; Zimmerman v. State, 49 Ala. App. 442, 272 So.2d 914.

The conflict in the testimony between the appellant's alibi and that of the State presents a question for the jury. McColston v. State, 20 Ala.App. 591, 104 So. 347; Zimmerman v. State, 49 Ala.App. 442, 272 So.2d 914, and cases cited therein.

## II

At the conclusion of the trial court's oral charge, the appellant announced, "Satisfied."

We have carefully examined this record, as required by Title 15, Section 389, Code of Alabama 1940, and find no error therein. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.

---

1. From Appellant's brief:

" . . . Joseph Earl Slay stated that he never saw a gun nor any type of weapon in the hand of Lewis Ben Clay, and at that time he asked for Twenty Dollars ($20.00) and that he gave him Twenty Dollars ($20.00), and then he asked for another Twenty Dollars ($20.00) and that he gave him another Twenty Dollars ($20.00), and that Lewis Ben Clay then walked out of the door and Joseph Earl Slay turned to the telephone and that Lewis Ben Clay saw Joseph Earl Slay going toward the telephone and came back in and asked him if he was going to call the law. Joseph Earl Slay stated that he said, 'No, if you go on and leave me alone, I won't call anybody.' He further stated that at this point Lewis Ben Clay left and got into the automobile with Richard Earl Ford and that they drove away."